## ALFRED ELBERG AND OTHERS v. MARIA ELBERG.[1]

January 7, 1916.

Nos. 19,534—(185).

**Will — intention of testator.**

1. It is not necessary to the validity of a will that the intention of the testator be expressed in exact legal terms. Any language from which such intention may be ascertained is sufficient.

**Same — construction.**

2. The expression, "my * * * wife * * * shall have and be lawful owner of one-half * * * my * * * property," and certain children "shall have their equal share" after my wife takes her half, *held* to have been intended by the testator as express grants to the legatees named.

**Same.**

3. The will provided for a distribution of the estate to the children "after my death." The expression "after my death" is held to fix the death of the testator as the time when the legatees should come into possession of their legacies.

**Will — rule applied.**

4. The rule that where by a will an absolute estate in property is clearly and unequivocally granted, a subsequent indefinite clause therein limiting or attempting to limit the grant to one for life is inoperative and void, applied to the will set out in the opinion.

From the order of the probate court for Wabasha county admitting to probate the last will and testament of Lars E. Elberg, deceased, Alfred Elberg, Eugene Elberg and Hilma Martin appealed to the district court for that county. The appeal was heard before Snow, J., who made findings and modified the final decree of the probate court as stated at the beginning of the opinion. From the judgment entered pursuant to the order for judgment, the persons named appealed. Reversed.

*Henry W. Morgan,* for appellants.

*J. E. Phillips* and *Wondra & Helm,* for respondent.

[1] Reported in 155 N. W. 751.

BROWN, C. J.

Lars Elberg, a resident of Wabasha county, died on January 13, 1915, leaving what purported to be his last will and testament. The will was presented to the probate court and was duly allowed and admitted to probate. Administration was granted to the widow, and in due course of time she presented her final account, which was approved; whereupon the probate court made an order of distribution in harmony with the directions of the will as construed by the court. An appeal was taken to the district court, where the sole question presented was the construction of the will. The district court held that the testator intended by the will to vest in the widow an absolute title to one-half his property, real and personal, and a life estate in the other half. Judgment was entered accordingly, from which certain of the heirs, beneficiaries named in the will, appealed to this court. The only question presented to this court is the construction of the will.

Testator left surviving him, as his legal heirs, his widow, who was his second wife, three children issue of his first marriage, and three children by the second marriage. As we understand the matter the children have all reached the age of maturity. His property real and personal amounted in value to over $12,000. This he disposed of by his will as follows:

"Second. After the payment of such funeral expenses and debts, I give, devise and bequeath to my beloved wife, Maria Elberg, she shall have and be lawful owner of one-half of all real estate and personal property of which I am lawful owner or of which I may become lawfully scized. My said wife, Maria Elberg, shall have and be lawful owner of one-half of all my real estate and personal property as long as her natural life, or (in other words), as long as she doth live.

"Third. After my death my son Anton Hjalmar shall have $400.00 Dollars and my daughter Selma L. shall have $200.00 Dollars and Julia S. shall have $200.00 dollars over and above their share of the one-half of all the real estate and personal property that is left after my wife takes her half.

"Helma, Eugen, Alfred Elberg, they are my lawful issue, they shall have their equal share of the one-half when the above amount is taken

off first, except that Mirtle Elberg, daughter of Alfred Elberg, shall have one-third of his share."

This quotation includes all essential parts of the will, and the introductory and concluding parts thereof throw no light upon the question to be determined.

The rules guiding courts in the construction of wills are too well settled to justify discussion or restatement. The sole province of the court in all such cases, where the terms of the will are in doubt, is to ascertain and give effect to the intention of the testator. When such intention is found from the will, taken in all its parts, it is conclusive and must be applied. 3 Dunnell, Minn. Dig. § 10257. The will here involved was evidently drawn by an unskilled hand and is overburdened with inaccuracies of expression, and the real intention of the testator is left in much doubt and uncertainty. The first real difficulty comes in construing the second subdivision above quoted. The first part thereof discloses a manifest purpose, evidenced by the language there used, to grant to the wife an absolute title to one-half of testator's property. It reads: "I give, devise and bequeath to my beloved wife, Maria Elberg, she shall have and be lawful owner of one-half of all real estate and personal property of which I am lawful owner." While the expression is awkward, the intention is clear. Doubt arises from the next following clause wherein the expression is: "My said wife * * * shall have and be lawful owner of one-half of all my real estate and personal property as long as her natural life." This clause, a complete sentence, was troublesome to the trial judge, but he finally solved the matter in the conclusion that the testator intended thereby not to limit the estate granted by the preceding clause, but to give to his widow for life the half of his property not included in the preceding grant absolute.

We are unable to concur in this conclusion, for it results in wholly eliminating from the will other portions which are clear and leave no reasonable ground for doubting that the testator intended that one-half of his property should, at his death, pass to his children. By the third subdivision of the will it is provided that "after my death" certain of the legatees named, issue of the second marriage, shall receive specific money payments, "over and above their share of the one-half of all the real estate and personal property that is left *after my wife takes her*

*half."* The will then mentions the other legatees, and directs that "they shall have their equal share * * * when the above amount is taken off;" the "above amount" having reference to specific money bequests just mentioned. All this, the testator declared, shall take place "after my death," and there is no suggestion that the estate thus granted should not become vested until after the death of his wife. The language of the will: "my * * * wife * * * shall have and be the lawful owner," and the other legatees "shall have their equal share of the one-half of all the real estate and personal property after my wife takes her half," must be construed as express grants, and as directions that the property of the testator should be distributed accordingly. 1 Schouler, Wills, §§ 559, 591. The language is not that usually found in such instruments, but it is expressive, in a homely way, of an intention to that effect. Testator was not required to employ in the will apt legal terms, but had the right to give directions in his own language, and, since the particular language renders such intention clear, it must be given effect. The provisions of the third subdivision clearly disclose an understanding on the part of the testator that, by the preceding provisions, he had granted and devised to his wife only one-half his property, and by this provision he undertook to dispose of the other half and expressly provided for a distribution thereof among his several children. Effect cannot be given this part of the will, which is clear and free from ambiguity, if the provisions of the second subdivision be construed as vesting the entire property in the wife; one-half absolutely and one-half for life. The third subdivision is clear and cannot be rejected. It provides that "after my death," the distribution among the children shall take place. There is no suggestion that such distribution is to be postponed until the death of the wife. The expression "after my death" must therefore be construed as fixing the death of testator as the time when the legatees should come into possession of their legacies. Owen v. Williams, 114 Ind. 179, 15 N. E. 678; Collins v. Wardell, 65 N. J. Eq. 366, 54 Atl. 417; Petition of Swinburne, 16 R. I. 208, 14 Atl. 850; 2 C. J. 396.

Our conclusion, therefore, is that the predominating thought of the testator was to divide at his death his property equally between his wife and children, giving one-half to the wife, the other half to the children

in the proportions heretofore stated. And we have only to consider the second clause of the first subdivision, which apparently grants to the widow a life estate to one-half testator's property, in addition to the absolute grant of the preceding clause. In our view of the matter this clause, only by a forced construction, can be treated as an intentional qualification of that which precedes it in the same paragraph, or as a qualification of the grant to the children which follows in the next paragraph. It is, in fact, extremely doubtful what testator intended thereby, and it must be held inoperative upon the estates thus expressly and clearly granted. 30 Am. & Eng. Enc. (2d ed.) 748; Lambe v. Drayton, 182 Ill. 110, 55 N. E. 189; Adams v. Massey, 184 N. Y. 62, 76 N. E. 916; 1 Schouler, Wills, § 478, and cases there cited. We reach this conclusion not because the other construction would render inoperative the provisions of the will granting rights in one-half of the property to the children (Greenwood v. Greenwood, 178 Ill. 387, 53 N. E. 101), but from the will taken as a whole, for we gather therefrom a clear intention on the part of testator to grant to his widow one-half of his property absolute, and to the children the other half. Bailey v. Sanger, 108 Ind. 264, 9 N. E. 159.

The judgment appealed from will therefore be reversed and the cause remanded for judgment in harmony with the views herein expressed.

It is so ordered.